## PHILPOTT v. STANDARD OIL CO.

### Civ. 4781.

District Court, N. D. Ohio,
Western Division.

April 21, 1943.

particular point has been decided by the courts. The court decided that the plaintiff might retain that phrase in his complaint; and that the intervening complainants might in due time file their intervening complaint, or file such other authority as might place themselves within the jurisdiction of the court, so that the court might render a judgment and the judgment be binding upon the intervenors.

In accordance therewith, subsequent to the pre-trial conference held on March 29th, the twenty-two intervening complainants filed their complaint and made themselves a party to the suit. Their intervening complaint is on all fours with the complaint theretofore filed by Henry Philpott.

Immediately thereafter the defendant filed its answer to the complaint of the intervening plaintiffs, which answer I think is substantially in accord with the answer theretofore filed to the complaint of Henry Philpott.

It appears from the record made in the trial of this case that the plaintiffs are still cleaners in the employ of the defendant, The Standard Oil Company of Ohio, at its plant here in Toledo, Ohio. The subject of their complaint was the claim that they were required to pass a waiting time, or rather a preparation time, before they were actually rung in by the paymaster and their time commenced on the actual cleaning of the still. These preliminaries required them to wet down the coke in the still, and to do such other matters preliminary to the actual cleaning as they claim would consume from one-half hour to possibly two hours of their time, for which they were not on the payroll and were receiving no pay. They claim this caused overtime work on their behalf for which they were not paid. In addition to the overtime, they claim, of course, liquidated damages.

The answer to the intervening complaint sets out in Paragraph IX, the following:

"For its answer to the allegations of Paragraph IX of said intervening complaint, defendant denies that there is any overtime due from it to said intervening plaintiffs; defendant admits that on or about September 2, 1941, it paid said intervening plaintiffs certain sums of money for overtime compensation, but denies that said sums were not the amount of unpaid overtime compensation owing to said intervening plaintiffs, and further denies that it

Edward Lamb and Lowell Goerlich, both of Toledo, Ohio, for plaintiff.

Maurice F. Hanning and McAfee, Grossman, Hanning & Newcomer, all of Cleveland, Ohio, and Franklin F. Hayward, of Toledo, Ohio, for defendant.

KLOEB, District Judge.

The plaintiff, Henry Philpott, filed his petition under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. In it he seeks a recovery of overtime pay on behalf of himself and others similarly situated, as is permitted under the provisions of Section 16(b), 29 U.S.C.A. § 216(b); and he asks, in addition, for liquidated damages, attorney fees and costs.

First the defendant filed a motion seeking, among other things, to strike that clause from the plaintiff's complaint in which he states that he sues "in behalf of himself and other employees similarly situated".

The court overruled that motion; but did express himself in accord with an opinion heretofore rendered by Judge Freed, Smith v. Stark Trucking Inc., 53 F.Supp. 826, in the Eastern Division of the Northern District of Ohio, in which Judge Freed, with the consent of Judge Jones, overruled an opinion theretofore rendered by Judge Jones, Card v. Elmer C. Breuer, Inc., D.C., 42 F.Supp. 701, and the court here desired to place himself in accord with the Eastern Division of the Northern District of Ohio, and also what he believes to be the weight of authority in so far as that

is indebted to said intervening plaintiffs or any of its employees in a sum in excess of $5,000 or any other amount for overtime due under the provisions of the Fair Labor Standards Act or for any other reason.

"Defendant further specifically states and alleges that said sums of money paid by it to said intervening plaintiffs on or about September 2, 1941, were in full payment and settlement of any amounts then alleged to be due to said intervening plaintiffs for overtime compensation pursuant to the Fair Labor Standards Act."

In addition thereto, defendant denies generally that it owes the plaintiffs anything whatsoever.

I emphasize Paragraph IX of the answer because, while no motion was made by the plaintiffs to strike any portion of that answer from the pleading, yet upon the trial of the case plaintiffs' counsel was of the opinion that it was not sought therein to plead an accord and satisfaction; and that, therefore, no evidence ought to be admitted by the court that had any bearing whatsoever upon the claim of an accord and satisfaction.

The court when that question was raised had in mind the trial brief that had been filed by the defendant, and had in mind as well the precise language of Paragraph IX, which the court has just quoted. In the trial brief filed by the defendant, it states on page 5 thereof: "It will be noted that the defendant has not pleaded accord and satisfaction in its Answer for the reason that the Petition is indefinite with respect to the facts on which the general claims made in the Petition are based."

Strangely enough, following that statement, on page 9 of the trial brief, the defendant says the following: "* * * in the case now before the Court the defendant denies that it was ever liable for unpaid overtime by reason of a violation of the Fair Labor Standards Act, and, further it is clear that if any such liability ever existed the amount thereof was the matter of honest dispute and payments were made in full satisfaction of such obligation."

Then, under the heading, "Conclusion":

"Upon an examination of all the authorities, it can hardly be disputed that the courts have recognized that such suit for liquidated damages will not lie where the parties have settled the primary obligation in disposition of an honest dispute as to the defendant's obligation.

"The parties hereto had, prior to the bringing of this action freely negotiated a settlement of an honest dispute, and it is clear from an examination of the pertinent decisions that such settlement has terminated any obligation to the plaintiff herein and all others allegedly similarly situated."

Following up that theory, in a letter sent to the court, a copy of which was sent to counsel for the plaintiffs, dated April 8—that is yesterday—and received by the court this morning, on page 2 the defendant states: "Defendant has not, of course, abandoned its position that in any event an accord and satisfaction was arrived at. I do not believe that the Fair Labor Standards Act anywhere discloses a Congressional intent to discard the long line of judicial decisions establishing the principle that the law favors the settlement of disputes."

So the defendant at one point takes the position that it is not pleading accord and satisfaction; and again at two points it takes the position that accord and satisfaction was reached, in effect that it does plead an accord and satisfaction. But taking the language as is contained in the answer, the court is of the opinion that it alleges that it paid the overtime due the complainants; but it nowhere alleges that any accord and satisfaction was arrived at on the question of liquidated damages. So the court has permitted the pleading to stand as it is; has permitted certain evidence to be introduced in connection with the checks that were paid to the complainants allegedly in satisfaction of their claim for overtime compensation; but has taken the view throughout that there is no attempt to plead accord and satisfaction on the question of liquidated damages.

The record discloses that these complainants, acting through a committee headed by a spokesman, met with the plant superintendent of the defendant company, I think about the 27th day of June, 1941; and, among other complaints, complained to the superintendent that these still cleaners were not being paid for overtime work that they encountered in connection with the cleaning of the stills.

Thereafter, and without further colloquy between the superintendent and the representatives of the still cleaners, the still cleaners individually were called either to the office of the paymaster, Mr. Ladd, or the chief clerk; and they were given a

check on the 8th day of August, 1941, with the statement that there may be some further pay coming. And then on September 2nd, they were each given another check, which apparently, in so far as the company was concerned, was in final settlement of any claimed overtime due them.

On the backs of these checks, there was endorsed: "This is in full payment of overtime due from"—thereafter followed the respective dates on the two checks. Under that the payee of the check was required to make his endorsement in order to cash the check. It will be noted that it says, "This is in full payment of overtime".

Thereafter the complainants filed their petitions herein.

■ The record does not disclose with any sufficient definiteness any additional overtime that these complainants might be entitled to. The court cannot speculate or guess as to what additional might be due them. Hence we conclude—and I think counsel for the plaintiffs agreed at the conclusion of the case—that there is not now any claim for any additional overtime compensation in this suit.

■ That leaves the case in the situation where the complaint asks for liquidated damages, for attorney fees and for costs. There being no claim for anything additional in the way of overtime compensation, and the pleading of an accord and satisfaction, if any at all, going only to the question of overtime compensation, it appears to the court that that whole question is moot; that it deserves no further consideration in the settlement of this dispute and in the opinion of the court.

In the trial brief of the complainants, they state the question succinctly as follows: "* * * whether or not where alleged payment has been made after the accrual of unpaid overtime compensation, employees may claim an additional amount as liquidated damages where no release is given by employees for liquidated damages."

And then on page 2 of their trial brief: "We submit there is due and owing each of the plaintiffs an amount equal to any restitution made by the defendant in the nature of liquidated damages."

And then: "In conclusion, therefore, we submit—First,"—and this is no longer claimed—"that the records of the employer will disclose that there is due and owing

the plaintiffs certain amounts as unpaid overtime compensation; Second, that the employees' unpaid overtime compensation and an equal amount as liquidated damages accrued at the time the defendant violated the statute in not paying the same; Third, that any subsequent payment of unpaid overtime compensation would not relieve the defendant from paying an equal amount as liquidated damages; and, Fourth, that if any amounts were paid which are alleged to have been paid as unpaid overtime compensation upon the payment of such amounts, defendant was neither given a waiver of or release for the equal amount of liquidated damages which was due the employees."

In the trial brief of the defendant, it states its position thus: "In numerous cases the courts have held that the provision of the Fair Labor Standards Act with respect to the liability of a defendant for liquidated damages is mandatory. In practically every case, however, where this principle of law is pronounced, the liquidated damages were allowed not as a separate liability of the employer but in connection with the principal finding and judgment by the court that the defendant was indebted to plaintiff in a specific amount of back wages for a violation either of the minimum wage or maximum hour provision of the Fair Labor Standards Act. In other words, judgment was rendered in a principal amount and an equal amount as liquidated damages."

And then on page 9: "* * * in the case now before the Court the defendant denies that it was ever liable for unpaid overtime by reason of a violation of the Fair Labor Standards Act, and, further it is clear that if any such liability ever existed the amount thereof was the matter of honest dispute and payments were made in full satisfaction of such obligation."

And the conclusion: "Upon an examination of all the authorities, it can hardly be disputed that the courts have recognized that such suit for liquidated damages will not lie where the parties have settled the primary obligation in disposition of an honest dispute as to the defendant's obligation."

Let us get at some of the authorities. I want to say to counsel that I have spent quite a little time in an effort to review the authorities. The act is fairly new. Most of our authorities so far are in the Federal Supplements, and District Courts are not supposed to speak finally on matters

of this kind. I have received considerable help from counsel on both sides. I believe I have before me the pertinent authorities.

 It seems to the court that the defendant company does not ring true when it takes the position that while it made a settlement with these men following their complaint, it did not owe them anything for overtime compensation, because it specifically endorsed on its checks, "This is in full payment of overtime due from"—and then follows the period on each of the checks. It specifically states that it is in full payment of overtime due; so its position that it did not owe anything for overtime I think is incorrectly taken.

 Turning to the case of Overnight Motor Transportation Company v. Missel, which is found in 316 U.S. 572, on pages 581 and 582, 62 S.Ct. 1216, on page 1222, 86 L.Ed. 1682, Mr. Justice Reed, in delivering the opinion, states the following: "In the Circuit Court of Appeals it was held that the liquidated damages provision, section 16(b) of the Act, 52 Stat. 1069 [29 U. S.C.A. § 216(b)] was mandatory on the courts, regardless of the good faith of the employer or the reasonableness of his attitude."

I want you to keep that in mind specifically: "regardless of the good faith of the employer or the reasonableness of his attitude"; because the court finds a later case, Clour v. Jones, D.C., 42 F.Supp. 700, relied upon by the defense, decided by an Oklahoma District Court, wherein it seems to base its opinion on the question of good faith. And then Justice Reed proceeds: "The liquidated damages for failure to pay the minimum wages under section 6(a) and 7(a) are compensation, not a penalty or punishment by the Government. * * * Nor can it be said that the exaction is violative of due process."

It is compensation, and not a penalty or punishment by the government.

In the case of Robertson v. Argus Hosiery Mills, which is a Sixth Circuit case found in 121 F.2d 285, an opinion delivered by Judge Allen, paragraph 1 of the syllabus states: "An action under the Fair Labor Standards Act by an employee for collection of back wages, and an amount equal thereto as liquidated damages for having withheld the same, was not an action for enforcement of a 'penalty' so as to give federal district court jurisdiction irrespective of amount involved."

It is not a penalty.

Then another Sixth Circuit case: Northwestern Yeast Company v. Paul E. Broutin, 133 F.2d 628, 630, decided February 4, 1943, again an opinion by Judge Allen, it states upon this point: "* * * we think that this claim clearly arises upon contract. * * * Section 16(b) of the Fair Labor Standards Act [which establishes double compensation for failure to pay for overtime at the statutory rate] does not constitute a penalty, but is considered compensation." —Citing Overnight Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Robertson v. Argus Hosiery Mills, 6 Cir., 121 F.2d 285— * * * "Thus here the claim for overtime compensation is founded upon and is coexistent with the contract. The action for double compensation may be considered as debt or as an action for wages due under the employment agreement".—Citing certain cases.

So it is not a penalty; it is a debt.

From the case of Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622, paragraph 8 of the syllabus: "Employees adjudged to be entitled to restitution under Fair Labor Standards Act for difference between wages actually received and amounts they should have been paid at minimum and overtime rates under the act could not, even in absence of fraud or coercion on part of employers, 'waive' or 'release' their rights to such restitution so as to relieve employers from the obligations imposed by the act and the judgment."

I want specifically to call attention to that phrase which says: "even in absence of fraud or coercion on part of employers, 'waive' or 'release' their rights to such restitution." On page 626 of that opinion in 123 F.2d is the following:

"We shall now consider defendants' contention, adopted by the lower court, that the defendants, in the absence of fraud or coercion, had a right to take releases from their employees, or, to put the position another way, that the employees entitled to restitution had a right to waive the same so as to protect the defendants and relieve them from the obligation imposed by the Act and judgment. There is some dispute as to the precise manner in which the so-called releases were obtained by the defendants. The court found that they were obtained voluntarily and without coercion. In our view of the matter, the manner in which they were obtained is immaterial, and

there is no occasion to relate the facts connected therewith.

"In Section 2 of the Act, 29 U.S.C.A. § 202, Congress set forth its declaration of policy. The objectives aimed at were the elimination of labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of employees, and the eradication of the burdens on commerce caused by such sub-standard labor conditions. Robertson v. Argus Hosiery Mills, 6 Cir., 121 F.2d 285. Defendants concede that an agreement, in advance of employment, to accept less than permitted by law would render nugatory the objectives of the Act. We think precisely the same result would follow if the employer, by agreement with its employees, be permitted to pay less than the Act prescribes. Waivers in advance of employment are no different in substance or effect than waivers of back pay for past employment. In both situations, the employers pay, and the employees receive, less than the statutory compensation. In each situation, the statutory requirements and the purposes of the legislation are ignored. We shall refer to one only of the numerous cases construing legislation prescribing statutory compensation. In United States v. Morley Const. Co., 2 Cir., 98 F.2d 781, the court considered a contention that employees had waived their right to the difference between the wages they had been paid and the 'prevailing wage' required by statute. In rejecting such contention, the court, on page 789 of 98 F.2d said: '* * * but the statute, which forbad any contract that did not protect them (the laborers), forbad any release—another contract—which deprived them of the protection so granted. * * * we are satisfied that the statute cannot be circumvented by so easy a device. * * *'

"And further: '* * * To this end it was as necessary to deny them (i.e., the laborers) the power to bargain away their privilege after they had performed their labor, as before. * * *' "

That is a Seventh Circuit decision, and the opinion is by Circuit Judge Major.

There is found the case of Hutchinson v. William C. Barry, Inc., D.C., 44 F.Supp. 829. It will be noted that Fleming v. Warshawsky & Co. was decided November 27, 1941. The Hutchinson case, in the District Court of Massachusetts, was decided on May 1st, 1942; and District Judge Ford says the following:

"The motion by the plaintiff that the eighth paragraph of the defendant's answer be stricken as immaterial is granted.

"The complaint sets up a cause of action under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219. The eighth paragraph of the answer sets up as a defense that the plaintiff gave the defendant a release of 'all and any claims now or hereafter pertaining to my employment * * *'."

That is a pretty broad release. That is not simply a statement in payment of overtime compensation. That is a statement which says in release of "all and any claims now or hereafter pertaining to my employment."

"Several courts have held that a release of claims is no defense to an action under this statute." —citing Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622, 626; United States ex rel. Johnson v. Morley Construction Co. et al., 2 Cir., 98 F.2d 781, 789; Travis v. Ray, D.C., 41 F.Supp. 6, 8. "I believe these authorities are decisive of the question presented by this motion. Moreover, I agree with the reasoning on which they are based. The act constitutes a declaration of public policy against sub-standard labor conditions. This policy would be defeated if the validity of contracts such as this were to be upheld. It is obvious that desire to continue in employment on the part of the laborer would make it easy for an employer who wished to ignore the act's provisions to induce him to execute a release of claims under the provisions of the act. Unless such agreements as this be declared void, it would therefore be easy to circumvent the declared purpose of Congress."

He cited therein the case of Travis v. Ray. That case is found in 41 F.Supp. 6. It is a decision of the District Court of the Western District of Kentucky, by District Judge Miller, and Judge Miller says in paragraph 2 of the syllabus: "The Fair Labor Standards Act is 'mandatory' upon the employer, and fact that employee was paid sum provided in contract and made no claim for additional compensation did not bar employee's action for minimum compensation provided by the act."

And paragraph 3: "Neither the employer nor the employee can agree that the amount actually paid and received by employee shall

be less than the minimum specified by the Fair Labor Standards Act."

Paragraph 4: "An employee cannot give a valid release of his rights against the employer in consideration of receiving payment of an amount less than that provided by the Fair Labor Standards Act."

And then on page 8 of 41 F.Supp. part of the opinion reads as follows: "Neither the employer nor the employee have the right to agree by contract that the amount actually paid and received shall be less than the minimum amount specified by the statute. The statute imposes a minimum which must be complied with. * * * Nor is it permissible for the employee to give a valid release of his rights against the employer in consideration of receiving payment of an amount less than that provided by the statute. 'The statute was passed to protect them against the economic pressure it was assumed they would be unable to resist, if offered a job. To this end it was as necessary to deny them the power to bargain away their privilege after they had performed their labor, as before.' "—citing United States v. Morley Construction Co., 2 Cir., 98 F.2d 781, 788.

The case of Calaf v. Gonzalez is found in 127 F.2d at page 934. It is a decision of the First Circuit, decided May 8, 1942; and the seventh paragraph of the syllabus reads as follows: "The provision of the Fair Labor Standards Act stating that an employer who violates the wage and hour provisions shall be liable for unpaid minimum wages or unpaid overtime compensation and for an equal amount as liquidated damages is 'mandatory', and the Federal District Court has no authority to exercise discretion in awarding liquidated damages."

It will be noted in this case that the court is passing upon a decision theretofore rendered by Judge Cooper, the District Judge for the District Court of the United States for Puerto Rico. I have an opinion of Judge Cooper's that I want to refer to later. Hence I call attention to that. On page 937 of the opinion in 127 F.2d, the court says:

"The Act is remedial in its nature and should be liberally construed and the exceptions to the coverage of the Act should be narrowly construed. * * *

"We find no merit in defendants' contention that liquidated damages should not be awarded in this case. The statute provides very clearly: 'Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.' * * * This provision is mandatory in its statement and there is no authority in the district court to exercise discretion in awarding liquidated damages. This view has been uniformly followed in a number of district court decisions."—citing Thompson v. Daugherty, D.C., 40 F.Supp. 279, 285; Magann v. Long's Baggage Transfer Co., Inc., D.C., 39 F.Supp. 742, 750; St. John v. Brown, D.C., 38 F.Supp. 385, 390.

The case of Thompson v. Daugherty, which is referred to there, is a case that was decided July 26, 1941, by the District Court of Maryland; and in that case, at page 284 of 40 F.Supp., where the conclusion of the opinion is found, the court says:

"The remaining question is whether the plaintiff is also entitled to double this amount as 'liquidated damages'. Section 216(b) 29 U.S.C.A., provides: 'Any employer who violates the provisions of section 206 or section 207 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. * * * The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.' * * *

"The intrinsic nature of the additional allowance would seem to make it a penalty rather than properly liquidated damages, but however that may be, the wording of the statute is clearly mandatory and leaves no discretion in the court as to its allowance. It has been uniformly so held in many district court cases."

And then he cites quite a number of Federal District Court cases, going back as far as 32 F.Supp.

In the case of Wilkinson v. Noland Company, which is found in 40 F.Supp. page 1009, decided September 30, 1941, at page 1013 District Judge Wyche says the following:

"Defendant's obligation to pay wages and overtime to its employees is not exclusively

the private concern of the parties, but is regulated by a statute passed in the public interest. The Fair Labor Standards Act expressed the judgment of Congress that the nation has a direct interest in the employment of workers at minimum levels. The objectives of the Act and the methods employed to attain them may not be set at naught by agreements between the parties, or by the acquiescence of the employees.

"Therefore, no agreement by the employees entered into before or during their period of employment, to work for less than the minimum wage, or not to accept overtime compensation, or to accept overtime compensation at rates lower than those prescribed by the Act, and no acquiescence by employees by failing to report overtime, as was done in this case, would be effective. To approve a waiver by employees of the minimum wages and overtime compensation due them would be to thwart the purposes of the Act.

"The minimum wage law was passed not only for the establishment of individual private rights, but to declare solemnly on the part of the State, that as a matter of public policy, it is interested in seeing that its citizens are protected in such rights, and, therefore, 'where a right has been given to an individual not alone for his private benefit, but as a matter of public policy, in the interest of the state, it may not be waived by any one.' "

Clour v. Jones, D.C., 42 F.Supp. page 700, an Oklahoma case decided June 19, 1941, is one of the cases chiefly relied upon by the defense to sustain its position that it owed no sum as and for liquidated damages. The Judge in his opinion says the following: "One question yet remains, and that is, whether or not the plaintiff is entitled to recover the judgment for liquidated damages. The court is of the opinion that under the facts of the case the plaintiff is not entitled to such judgment. At the time of his discharge the defendant paid the plaintiff all amounts due him. The court is of the opinion that during the times that the plaintiff was working for the defendant, the defendant in good faith did not believe that the plaintiff came within the provisions of the Wages and Hour Law or the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. It is doubtful if prior to the time of his discharge the plaintiff himself considered that he came within the provisions

of the Act. Under that state of facts the court does not believe that the defendant should be required to pay any amount as liquidated damages, having compensated the plaintiff in full for his overtime at the date of his discharge. * * *"

You can well see that the opinion predicates its conclusion upon the good faith attendant upon the defendant when he paid the overtime compensation to the plaintiff. Yet we must bear in mind, following this June 19, 1941, decision, we have the Missel case, which the court has heretofore cited, which specifically does away with and disregards the question of good faith on the part of the employer.

In the case of Moss v. Acwell Tone, Inc.,[1] it was held that payment by an employer of the amount found by the Wage and Hour Division to be due a lithographer for overtime was not an accord and satisfaction of the employee's claim so as to preclude him from bringing a separate action for a recovery of liquidated damages under Section 16(b) of the Act. Nor did the hearing before the Wage and Hour Division constitute a final disposition of the employee's claim so as to be subject to the plea of res judicata. That is a decision by the New York Municipal Court on February 13, 1942.

Hall v. Smith,[1] held that, notwithstanding any settlement or purported settlement that may have been made, even though it may have been approved by the Wage and Hour Division, the recovery of anything that may be due under the provisions of the Act to an employee who is within its protection will not be precluded. Likewise, the employer is not precluded from asserting any defense that he may have, both a denial of coverage and a denial of any balance due. That is a decision dated July 13, 1942, by the United States District Court for the Eastern District of Kentucky.

The case of Rigopoulos et al. v. Kervan, D.C., 47 F.Supp. 576 held that an employer may not be relieved from payment of liquidated damages by reason of having paid the employees the overtime pay due them. The fact than an action by the Wage and Hour Administrator against the defendant was compromised by payment of the overtime compensation has no bearing on the controversy since the present plaintiffs were not parties to the injunction suit.

---

[1] No opinion for publication.

The case of Lofton v. Seneca Coal and Coke Company,[1] a decision by the Northern District of Oklahoma United States Court, held that voluntary payment to the plaintiff of the amount of overtime pay due him, after consultation with the Wage and Hour Division, does not operate to relieve the defendant of his liability to pay to the plaintiff an additional equal amount as liquidated damages. That seems to be well to the point.

Greenbaum v. Meadow Provision Company,[1] which is a New York Supreme Court decision held: Minimum wages and overtime compensation due an employee under the Act are rights given him not alone for his private interest, but as a matter of public policy, and in the interests of public policy such rights may not be waived by the employee under an agreement between him and the employer to accept a lesser sum than due under the provisions of the Act. For this reason, a plea of accord and satisfaction is not a valid defense to an employee's suit for wages and overtime compensation under the Act.

There is the case of Barrineau v. Carolina Milling Company, a Corporation, 52 F.Supp. 197, a decision by the United States District Court for the Eastern District of South Carolina which held that where an employee was entitled to recover wages and liquidated damages in an equal amount and there was no dispute as to hours worked or wages due, but only as to the employee coming under the provisions of the Act, an offset by the employer of an indebtedness due it from the employee which had nothing to do with wages, cannot be deducted from the wages before computing the liquidated damages even though the employer was acting in good faith in disputing the applicability of the Act, since the additional equal amount required by the Act is not a penalty, but liquidated damages which become due immediately along with the wages earned.

The case of Guess et al. v. Montague, 51 F.Supp. 61, arising in the Eastern District of South Carolina, United States District Court held that voluntary payment of minimum wages and overtime compensation after regularly scheduled pay days and before any controversy concerning the amount due has arisen between an employer and his employee, relieves the employer of his liability to pay an additional equal amount as liquidated damages under the Act in the absence of proof that the employer was seeking some advantage, or was trying to evade compliance with the Act, or was indifferent to his obligations created by the Act.

It seems to me that the court, in pronouncing that opinion, December 4, 1942, certainly did not have in mind the first two cases I have cited here, by higher authorities. In other words he is predicating his decision upon an absence of proof that the defendant was trying to evade the act or was indifferent to the act; whereas, the decisions I have read from higher courts specifically say that the fair conduct of the defendant has nothing whatever to do with the requirements of the act.

Rafael Ortiz, et als., v. Puerto Rico, is a decision by District Judge Cooper, cited by the defense: "Plaintiffs having voluntarily relinquished any claim that they may have had to liquidated damages cannot now ask that defendant be required to pay the liquidated damages which would have been due had it been determined that defendant failed to pay the minimum wage under the Fair Labor Standards Act.

"I hold that plaintiffs may waive any claim to liquidated damages provided there is no deception, coercion or undue influence used to induce such waiver. In the present case the waiver was voluntary on the part of the plaintiffs and no deception or undue influence appears in the case."

That was the opinion of the court on February 23, 1943. Apparently Judge Cooper, in arriving at that conclusion, did not have before him the Missel case, where the court specifically says that the additional amount is due regardless of the good faith of the employer or the reasonableness of his attitude.

I want to cite one further reference that may be of interest to counsel, found in The George Washington Law Review, April Issue, 1943, Volume 11, No. 3. It is a discussion of minimum wage statutes; and at the top of page 391, there are the following statements: "Minimum wage statutes are generally regarded as enacted for the benefit of the public as well as for the benefit of the individual employee."—citing Larsen v. Rice, 100 Wash. 642, 171 P. 1037, and some other cases—"The right of the employee to the minimum wage is an irrevocable benefit forced upon him by the public policy and

---

[1] No opinion for publication.

it cannot be waived or estopped by the employee or by anyone else."—citing United States v. Andrews, 240 U.S. 90, 36 S.Ct. 349, 60 L.Ed. 541; Wright v. State, 223 N.Y. 44, 119 N.E. 83; and some other cases.

So the court can come to but one conclusion in this case and that is that the endorsement of the checks by these complainants as payment for overtime compensation meant just what it said and nothing more. It did not mean that they were relinquishing any claim to the double compensation which the statute provides. They are entitled to the liquidated damages or double compensation provided by the statute. There is nothing in the record to show that they made any pretense of waiving any claim or any right to such liquidated damages. The good faith of the defendant company has nothing to do with the question. The court is not responsible for nor can it amend the statute. The Congress has said that overtime is due and that the double liability is not a penalty. The courts have said it is a debt. It is part of the contract. It is owing. Whenever the overtime compensation is not paid by the defendant, then he owes, in addition to the overtime compensation, the liquidated damages.

So it is the judgment of the court that the plaintiffs are entitled to an equal sum to that which they received as and for overtime compensation; because the court must conclude that the defendant, after auditing its books and submitting a statement to each of these plaintiffs, a statement that accompanied their checks when they received them, showing the overtime hours that they worked, must have been convinced in its own mind that it justly owed these sums to these complainants for overtime compensation. So they, will be allowed an equal sum as liquidated damages.

It seems to me that considering all twenty-three of the complainants, and averaging the checks that they have received, there is possibly a sum total of about five hundred and fifty dollars involved here. Speaking roughly, because I have not attempted to audit each of those checks, there should be deducted from each of those checks an item which comprises a part of each sum that is not claimed in the complaint. Counsel will understand that in the draft of the findings and conclusions, so that the amount due each of these complainants will be the sum that was paid them for overtime compensation, minus a small item in some of these checks, or possibly all of them,—I don't know—that should be deducted and not computed in the sum that goes to make up the liquidated damages.

There will be allowed the sum of one hundred and fifty dollars as and for counsel fees and the costs.